**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and THE STATE OF ILLINOIS, <u>ex</u> <u>rel.</u> ALAN J. LITWILLER, | ⋮ | |
| Plaintiff, | ⋮ | Civil Action No: 1:11-cv-08980 |
| | ⋮ | |
| v. | ⋮ | Hon. Robert M. Dow, Jr. |
| | ⋮ | |
| OMNICARE, INC., | ⋮ | |
| Defendant. | ⋮ | |

## <u>OMNICARE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS RELATOR'S COMPLAINT</u>

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ................................................................................................1

II.     PROCEDURAL HISTORY..................................................................................2

III.    FACTUAL BACKGROUND ...............................................................................2

      A.     "Forgiveness of Accounts Receivable" Compl. ¶¶ 36 – 48 ...................2

      B.     "Improper Discounts for Pharmaceutical Services" Compl. ¶¶ 49 – 58.................3

      C.     "Improper Refunds and 'Credits'" Compl. ¶¶ 59 – 74 ...........................3

      D.     "Discounts and Subsidies for Third Party Services" Compl. ¶¶ 75 – 78...............4

      E.     "Free Consulting Services and Other Services" Compl. ¶¶ 79 – 83 .......................4

      F.     "Omnicare Foundation" Compl. ¶¶ 84 – 87 ..........................................4

IV.    SUMMARY OF THE ARGUMENT ...................................................................5

V.     THE COURT LACKS JURISDICTION OVER THE A/R CONDUCT AND THE DISCOUNTS CONDUCT ..................................................................................6

      A.     Allegations of the A/R Conduct Should be Dismissed Under the FCA's and IFCA's First-to-File Bar............................................................6

      B.     The Discounts Conduct Should Be Dismissed Under the FCA's and ICFPA's Public Disclosure Bar ..............................................................9

VI.    RELATOR'S CLAIMS DO NOT STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED ......................................................................................14

      A.     Allegations of False Claims Arising from Kickback Violations Must Be Dismissed if Certain Pleading Requirements Are Not Met ..................................14

      B.     Relator Fails to State a Claim Because He Has Not Sufficiently Plead Kickback Violations on Which His Claims Are Premised ....................................16

VII.   RELATOR'S CLAIMS SHOULD BE DISMISSED UNDER RULE 9(B) ....................19

      A.     Relator Fails To Identify Any False Claims As Required By Rule 9(B)...............20

      B.     Relator's Kickback Allegations Which Form the Predicate of Each of His Claims Are Not Plead With The Requisite Particularity Under Rule 9(B) ..........23

VIII.  CONCLUSION..................................................................................................26

# TABLE OF AUTHORITIES

## Cases

*Ackerman v. Nw. Mut. Life Ins. Co*.,
  172 F.3d 467 (7th Cir. 1999) ...................................................................... 19, 20, 25

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................... 12

*Bankers Trust Co. v. Old Republic Ins. Co.*,
  959 F.2d 677 (7th Cir. 1992) ....................................................................... 20, 23, 25

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................... 14

*Capitol Leasing Co. v. F.D.I.C.*,
  999 F.2d 188 (7th Cir. 1993) ............................................................................. 6, 11

*Engel v. Buchan*,
  710 F.3d 698 (7th Cir. 2012) .............................................................................. 14

*Glaser v. Wound Care Consultants, Inc.*,
  570 F.3d 907 (7th Cir. 2009) ...................................................................... 9, 10, 11, 13

*Graham Cnty. Soil & Water Conservation Dist. v. United States*,
  130 S. Ct. 1396 (2010)....................................................................................... 22

*Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*,
  570 F.3d 811 (7th Cir. 2009) .............................................................................. 14

*Harrison v. Westinghouse Savannah River Co.*,
  176 F.3d 776 (4th Cir. 1999) .............................................................................. 20

*Leveski v. ITT Educational Services*,
  719 F.3d 818 (7th Cir. 2013) ........................................................................... 10, 12

*Mason v. Medline Industries, Inc.*,
  No. 07 C 5615, 2009 WL 1438096 (N.D. Ill. 2009)................................................. 19

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co*.,
  631 F.3d 436 (7th Cir. 2011) ........................................................................ 20, 23, 25

*Uni*Quality, Inc. v. Infotronx, Inc*.,
  974 F.2d 918 (7th Cir. 1992) .............................................................................. 20

*United States ex rel. Barrett v. Columbia/HCA Healthcare Corp*.,
  251 F. Supp.2d 28 (D.D.C. 2003)......................................................................... 15

*United States ex rel. Batiste v. SLM Corp*.,
  740 F. Supp. 2d 98 (D.D.C. 2010), *aff'd*, 659 F.3d 1204 (D.C. Cir. 2011)............................... 7

*United States ex rel. Batty v. Amerigroup Illinois, Inc.*,
  528 F. Supp. 2d 861 (N.D. Ill. 2007) .................................................................. 6, 7, 9

*United States ex rel. Beauchamp v. Academi Training Ctr., Inc.*,
  1:11CV371, 2013 WL 1189707 (E.D. Va. Mar. 21, 2013) ........................................... 6

*United States ex rel. Bragg v. SCR Med. Transp., Inc.*,
   No. 07 CV 2328, 2011 WL 1357490 (N.D. Ill. Apr. 8, 2011)................................. 21

*United States ex rel. Chovanec v. Apria Healthcare Group, Inc.*,
   606 F.3d 361 (7th Cir. 2010) ......................................................................... 6-7

*United States ex rel. Foster v. Bristol-Myers Squibb Co.*,
   587 F. Supp. 2d 805 (E.D. Tex. 2008) ............................................................... 18

*United States ex rel. Fowler v. Caremark RX, L.L.C.*,
   496 F.3d 730 (7th Cir. 2007) ............................................................... 10, 19, 21

*United States ex rel. Garst v. Lockheed–Martin Corp.*,
   328 F.3d 374 (7th Cir. 2003) ......................................................................... 21

*United States ex rel. Gear v. Emergency Med. Associates of Illinois, Inc.*,
   00 C 1046, 2004 WL 1433601 (N.D. Ill. June 25, 2004) ........................................ 6

*United States ex rel. Geschrey v. Generations Healthcare, LLC*,
   922 F. Supp. 2d 695 (N.D. Ill. 2012) ............................................................... 21

*United States ex rel. Goldberg v. Rush University Medical Center*,
   680 F.3d 933 (7th Cir. 2012) ............................................................... 9, 10, 24

*United States ex rel. Grandeau v. Cancer Treatment Centers of America*,
   No. 99 C 8287, 2005 WL 2335567 (N.D. Ill. Aug. 19, 2005)................................... 23

*United States ex rel. Grenadyor v. Ukranian Village Pharmacy, Inc.*,
   895 F. Supp. 2d 872 (N.D. Ill. 2012) ......................................................... 15, 22

*United States ex rel. Gross v. AIDS Research Alliance–Chicago*,
   415 F.3d 601 (7th Cir. 2005) ................................................................. 19, 22

*United States ex rel. Kennedy v. Aventis Pharms., Inc.*,
   610 F. Supp. 2d 938 (N.D. Ill. 2009) ............................................................... 22

*United States ex rel. Klaczak v. Consolidated Med. Transp.*,
   458 F. Supp. 2d 622 (N.D. Ill. 2006) ......................................................... 15, 16

*United States ex rel. Marquis v. Northrom Grumman Corp.*,
   No. 09 C 7704, 2013 WL 951095 (N.D. Ill. Mar. 12, 2013)................................ 14, 20

*United States ex rel. Obert-Hong v. Advocate Health Care*,
   211 F. Supp. 2d 1045 (N.D. Ill. 2002) ......................................................... 16, 23

*United States ex rel. Osheroff v. Tenent Healthcare Corp.*,
   No. 10–24486–cv–SCOLA, 2012 WL 4479072 (S.D. Fla. Sept. 28, 2012) .......... 13, 15, 16, 23

*United States ex rel. Sandager v. Dell Mktg., L.P.*,
   872 F. Supp. 2d 801 (D. Minn. 2012) ............................................................... 7

*United States ex rel. Soulias v. Northwestern University*,
   No. 10 C 7233, 2013 WL 3275839 (N.D. Ill. June 27, 2013) ...................... 21, 23, 26

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,
   125 F.3d 899 (5th Cir. 1997) ......................................................................... 20

*United States ex rel. Upton v. Family Health Network, Inc.*,
  900 F. Supp. 2d 821 (N.D. Ill. 2012) .................................................. 14, 19, 21

*United States ex rel. Wildhirt v. AARS Forever, Inc.*,
  No. 09 C 1215, 2011 WL 1303390 (N.D. Ill. Apr. 6, 2011) .................................. 21

*United States ex rel. Yannacopoulos v. Gen. Dynamics*,
  652 F.3d 818 (7th Cir. 2011) ........................................................................ 22

*United States v. Bank of Farmington*,
  166 F.3d 853 (7th Cir. 1999) ........................................................................ 10

*United States v. Warden*,
  No. 07 C 4107, 2011 WL 6400351 (N.D. Ill. Dec. 11, 2011) ................................. 19

*Venture Associates Corp. v. Zenith Data Sys. Corp.*,
  987 F.2d 429 (7th Cir. 1993) .......................................................................... 3

## Statutes

305 ILCS 5/8A-3(b) ...................................................................................... 15

31 U.S.C. § 3729(a)(1) (2010) ................................................................... 14, 15

31 U.S.C. § 3729(b) ................................................................................ 14-15

31 U.S.C. § 3730(b)(5) .................................................................................. 6

31 U.S.C. § 3730(e)(4)(A) (2009) .................................................................... 10

31 U.S.C. § 3730(e)(4)(A)(iii) (2010) ...................................................... 9, 10, 11

42 U.S.C. § 1320a-7b(b) .......................................................................... 15, 16

42 U.S.C. § 1320a-7b(g) ............................................................................... 22

740 ILCS 175/3 ........................................................................................... 15

740 ILCS 175/4(b)(5) ..................................................................................... 6

740 ILCS 92/30(b) (2010) ........................................................................ 11, 13

740 ILCS 92/5 ............................................................................................ 15

## Rules

Fed. R. Civ. P. 12(b)(1) .................................................................................. 6

Fed. R. Civ. P. 9(b) ................................................................................ 19, 20

## Other Authorities

*United States ex rel. Maguire v. Omnicare, Inc.*,
  First Am. Compl., No. 02-cv-11436-RGS (D. Mass. Filed June 21, 2005) ...................... 11-12

*United States ex rel. Ruscher v. Omnicare*,
  Pls. Second Am. Compl., No. 4:08-cv-03396 (S.D. Tex. Filed Sept. 11, 2009) .................. 7-8

Defendant Omnicare, Inc. ("Defendant" or "Omnicare"), by and through its undersigned counsel, respectfully submits this memorandum of law in support of its Motion to Dismiss the Complaint of Alan J. Litwiller ("Relator") pursuant to Federal Rules of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, 12(b)(6), for failure to state a claim upon which relief can be granted, and 9(b), for failure to plead fraud with particularity.

## I.    **INTRODUCTION**

Relator's Complaint purports to bring claims for violations of the federal False Claims Act ("FCA"), the Illinois False Claims Act ("IFCA"), and the Illinois Insurance Claims Fraud Prevention Act ("ICFPA"), but mostly recycles allegations from previously filed lawsuits and public disclosures, resulting in a jumble of vague, unspecific allegations.  The Complaint suffers from several defects: it misrepresents a public document; it contains factual inaccuracies; it relies on information previously disclosed in other litigations and investigations; and it seeks to miscast legitimate business practices.  Moreover, Relator has failed to identify one single claim for payment filed by Omnicare – or anyone else for that matter – that was allegedly tainted by the conduct he claims occurred.  Furthermore, Relator has failed to identify by name any of the customers who allegedly received improper benefits from Omnicare.  Finally, Relator alleges conduct well beyond the area of his employment without setting forth the basis of his alleged knowledge.

For each of these reasons, independently and taken together, Relator's Complaint is legally deficient.  Omnicare therefore respectfully requests that the Court dismiss Relator's Complaint with prejudice in its entirety.

## II.     PROCEDURAL HISTORY

Relator filed his complaint under seal on December 19, 2011.  ECF No. 1 ("Complaint" or "Compl.").   On March 23, 2013, the United States filed a notice of its decision not to intervene, and stated that the State of Illinois, by its Attorney General, concurred in the decision not to intervene.  ECF No. 13.  On the same day, the Court ordered that the Complaint be unsealed and served upon Omnicare.  ECF No. 12.  On June 6, 2013, Relator requested Omnicare waive service of a summons, which Omnicare agreed to do.  On June 25, 2013, the Court entered a briefing schedule for this motion to dismiss.  ECF No. 24.

## III.     FACTUAL BACKGROUND

Relator is a current employee of Omnicare, holding the position of Customer Service and Support Consultant.  Relator does not – because he cannot – allege that he was responsible for, or even involved in, submitting or preparing any claim to the government.  Nor does he allege that he was involved in billing customers or collecting amounts due from customers.  Stated differently, Relator does not allege that he was involved in *any* of the conduct set forth in the Complaint.[1]  Nor does Relator allege how he knows any of the information that forms the basis of his allegations in the Complaint.

### A.     "Forgiveness of Accounts Receivable"  Compl. ¶¶ 36 – 48

Relator alleges that as early as January of 2009, Omnicare allowed customers in Illinois to forego payment of accounts receivables for pharmaceutical services and non-prescription products in return for nursing facilities and their residents to continue purchasing prescription medications from Omnicare that were reimbursed by the Medicare and Medicaid programs.

---

[1] Relator pleads three causes of action: violation of the federal False Claims Act (Count I), the Illinois False Claims Act (Count II), and the Illinois Insurance Claims Fraud Prevention Act (Count III).  Each count is premised on six different theories of liability, summarized below.

("The A/R Conduct") Compl. ¶¶ 5, 36, 37.  Relator does not identify by name any of the customers, or any claims filed that were affected by the alleged conduct.  Nor does Relator allege that the accounts were not eventually collected.

**B.**    **"Improper Discounts for Pharmaceutical Services" Compl. ¶¶ 49 – 58**

Relator alleges that Omnicare charged rates to certain customers for consultant pharmacist services that were less than rates he alleges were required by a 2009 settlement and Corporate Integrity Agreement ("CIA") with the Department of Justice in order to induce those customers to continue doing business with Omnicare.  ("The Discounts Conduct") Compl. ¶ 58.[2]  Again, Relator does not identify by name any of the customers, or any claims filed that were affected by the alleged conduct.

**C.**    **"Improper Refunds and 'Credits'" Compl. ¶¶ 59 – 74**

Relator alleges Omnicare issued accounting credits to certain customers to induce them to continue doing business with Omnicare.  ("The Refunds and Credits Conduct") Compl. ¶ 74.  Relator does not explain how these alleged refunds or credits differ from the other allegations related to billing and collections, namely, alleged failures to collect accounts receivable and the alleged undercharges for consultant pharmacists.  As with those previously described allegations, Relator does not identify by name any of the customers, or any claims filed that were affected by the alleged conduct.  Nor does he state any basis for his conclusion that any refunds or discounts were not a result of a legitimate billing error.  Further, while Relator states that Omnicare

---

[2] Relator's claim has no basis in fact, as neither the settlement nor CIA required Omnicare to charge a stated amount for consultant pharmacists.  A true and correct copy of the CIA is attached hereto as Exhibit A, *available at* https://oig.hhs.gov/fraud/cia/agreements/omnicare_inc_11022009.pdf.  The Court may properly consider the CIA on this motion to dismiss.  *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) (nothing that documents which defendant attaches to his motion to dismiss are considered part of the pleadings if they are referred to in the complaint and are central to the claim, and so the court can consider these documents without converting the motion to one for summary judgment).  Relator is also wrong because the CIA involved the Health & Human Services Office of Inspector General, not the Department of Justice.

determined that certain customers were "entitled to" a credit, he does not allege that these specific credits were actually given. *See* Compl. ¶¶ 61, 64, 67, 70, 73.

### D. "Discounts and Subsidies for Third Party Services" Compl. ¶¶ 75 – 78

Relator alleges that Omnicare sold an electronic medical records service known as SigmaCare to a single customer at a discount in exchange for the customer's agreement to purchase pharmaceutical products from Omnicare.[3] ("The SigmaCare Conduct") Compl. ¶¶ 77–78. Relator fails to explain why the alleged SigmaCare discount would not be permitted by the customer's contract or would otherwise be improper. In fact, Relator does not provide *any* specificity regarding the price, costs, or discounts related to SigmaCare, at all. Nor does he identify the customer by name or any claims that were affected by the alleged conduct.

### E. "Free Consulting Services and Other Services" Compl. ¶¶ 79 – 83

Relator alleges that Omnicare gave certain consulting and advisory services to customers at no charge to induce those customers to purchase pharmaceutical products from Omnicare. ("The Free Services Conduct") Compl. ¶ 83. Relator acknowledges that the services are provided pursuant to Omnicare's contracts with its customers, Compl. ¶ 28, but fails to explain why Omnicare must charge a separate fee for these services. Moreover, Relator fails to identify any customer – even anonymously – who received these "free" services, or when the services were provided.

### F. "Omnicare Foundation" Compl. ¶¶ 84 – 87

Relator alleges that an Omnicare employee directed the Omnicare Foundation, a separate charitable organization, to make payments for the benefit of certain customers or potential

---

[3] Relator claims that other unidentified customers were "offered" SigmaCare at a discount, but does not identify any additional customer who allegedly purchased the product at a discount in exchange for Omnicare's pharmaceutical business. *See* Compl. ¶¶ 76, 78.

customers for purposes unrelated to the foundation's charitable function. However, Relator does not allege that the employee had authority to direct such payments, the amounts of the payments, when they occurred, or to whom specifically they were made.

## IV.    <u>SUMMARY OF THE ARGUMENT</u>

Relator's Complaint raises a host of generalized alleged conduct that should be dismissed for several, independent reasons.

First, two of Relator's alleged "schemes" should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. The A/R Conduct is the subject of a previously filed *qui tam* lawsuit and, therefore, is barred by the FCA's first-to-file bar. *See infra* Part V.A. The Discounts Conduct was previously disclosed to the government and Relator's Complaint does not meet its burden to show he is an original source. *See infra* Part V.B.

Second, Relator's entire Complaint should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim. Relator fails to allege an actionable theory of liability because Relator has not alleged facts sufficient to plead an unlawful kickback, which is the predicate for each and every claim for relief.

Third, Relator's entire Complaint should be dismissed because it fails to plead these fraud-based claims with the specificity required by Rule 9(b). Specifically, Relator fails to identify a single false claim submitted to either the Medicare or Medicaid programs and fails to allege sufficient details of the alleged kickbacks, including any recipient of any alleged kickback, and other key details regarding the alleged schemes.

## V. THE COURT LACKS JURISDICTION OVER THE A/R CONDUCT AND THE DISCOUNTS CONDUCT

Two of Relator's alleged schemes are not properly before this court because the underlying facts have already been disclosed to the government through a prior lawsuit and a government investigation. A Rule 12(b)(1) motion is a challenge of the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The Relator bears the burden of establishing subject matter jurisdiction. *United States ex rel. Gear v. Emergency Med. Assocs. of Ill., Inc.,* No. 00 C 1046, 2004 WL 1433601 (N.D. Ill. June 25, 2004). Where there is a contention that no subject matter jurisdiction exists, courts may "properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists," and doing so does not convert the motion into one for summary judgment. *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993); *see also United States ex rel. Beauchamp v. Academi Training Ctr., Inc.,* No. 1:11CV371, 2013 WL 1189707 (E.D. Va. Mar. 21, 2013).

### A. Allegations of the A/R Conduct Should be Dismissed Under the FCA's and IFCA's First-to-File Bar

The FCA provides that "[w]hen a person brings an action under this subsection, no person other than the government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5) (2010).[4] This provision is commonly known as the first-to-file bar and "precludes claims arising from events that are already the subject of an existing *qui tam* suit." *United States ex rel. Batty v. Amerigroup Ill., Inc.*, 528 F. Supp. 2d 861, 872 (N.D. Ill. 2007). "Secondary suits that do no more than remind the United States of what it has learned from the initial suit deflect recoveries from the Treasury to rewards

---

[4] The Illinois False Claims Act contains a parallel provision. 740 ILCS 175/4(b)(5).

[to relators] under § 3730(d)." *United States ex rel. Chovanec v. Apria Healthcare Grp., Inc.*, 606 F.3d 361, 364 (7th Cir. 2010).

Seventh Circuit courts applying the first-to-file bar examine: (1) whether an earlier action was pending at the time the later action was filed, and (2) whether the two actions are related. *See id.* at 362-64; *Batty*, 528 F. Supp. 2d. at 873-75. An action is related to an earlier-filed complaint if it alleges the same material facts, including facts that were revealed in the first action or would have been revealed by investigations launched based on the first action. *See Chovanec*, 600 F.3d at 365. "The second action is barred if it contains merely variations of the fraud scheme described in the first action, even if the second action alleged additional or somewhat different details about the defendant's fraud." *Batty*, 528 F. Supp. 2d at 873.

The Court does not have jurisdiction over the A/R Conduct incorporated into Counts I and II because on September 11, 2009, over two years before Relator filed his Complaint, relator Susan Ruscher filed her Second Amended Complaint ("Ruscher Compl.") in *United States ex rel. Ruscher v. Omnicare*, Pls. Second Am. Compl., No. 4:08-cv-03396 (S.D. Tex. Filed Sept. 11, 2009), containing the same allegation that Omnicare failed to collect accounts receivables in order to retain federal health care business. A true and correct copy of Ruscher's Second Amended Complaint is attached hereto as Exhibit B; a true and correct copy of the Ruscher docket is attached hereto as Exhibit C.[5]

---

[5] Ruscher filed her original complaint on November 14, 2008 and an amended complaint on December 30, 2008. The second amended complaint is attached here because it is the only complaint in that matter that has been unsealed. The fact that the Ruscher litigation was under seal at the time Relator filed his Complaint does not alter the analysis under the first-to-file bar. *See United States ex rel. Sandager v. Dell Mktg., L.P.*, 872 F. Supp. 2d 801, 810 (D. Minn. 2012) (finding that sealed complaints are still "pending actions" for purposes of the first-to-file bar and relator's argument that he had no knowledge of the sealed complaints when he filed his action irrelevant) (citing *United States ex rel. Batiste v. SLM Corp.*, 740 F. Supp. 2d 98, 104-05 n.3 (D.D.C. 2010), *aff'd*, 659 F.3d 1204 (D.C. Cir. 2011)). Exhibits B and C are also available through the Court's PACER system. Omnicare intends to move to dismiss the Ruscher case. The motion is due on October 7, 2013. *See* Exhibit C, Minute Entry Aug. 29, 2013 (ordering defendants file motion to dismiss within 30 days of filing of Third Amended Complaint).

In her complaint, Ruscher alleges, *inter alia*,

> in order to induce and retain business from favored skilled nursing facilities that provide services to a high volume of Medicare and Medicaid patients, Omnicare forgoes its Medicare Part A payments for pharmaceuticals and related services rendered to these facilities . . . Omnicare continues billing National Accounts and other favored customers for its Medicare Part A reimbursement but it declines to collect on these invoices regardless of how far these customers go into debt.

Ruscher Compl. ¶¶ 2, 4. Similarly, Relator here alleges that "Omnicare . . . engaged in a pattern and practice of agreeing to forego payments of those bills for many of its clients, in exchange for and as an inducement for the nursing facility and/or its patients to continue purchasing lucrative prescription medications from Omnicare." Compl. ¶ 36.

A comparison of Relator's allegations reveals that the Ruscher Complaint alleges many of the same details as Relator. Both Ruscher and Relator allege that the accounts receivable debt is made up of pharmaceutical services and products provided to the facilities. *Compare* Ruscher Compl. ¶ 598, *with* Compl. ¶ 37. Like Relator, Ruscher alleges that this was done at the direction of management. *Compare* Ruscher Compl. ¶ 598, *with* Compl. ¶ 36. Likewise, both allege that larger skilled nursing facilities get this preferential treatment, while others do not. *Compare* Ruscher Compl. ¶ 3, *with* Compl. ¶¶ 38, 42, 44, 46.

Relator's allegations relating to Illinois customers beginning in 2009 are wholly subsumed by Ruscher's allegations, which are nationwide in scope and begin as early as 2006. *Compare* Ruscher Compl. ¶ 3 (alleging that the skilled nursing facility chains that receive kickbacks are typically those with multiple locations and control "a large proportion of skilled nursing facility beds in the United States"), ¶¶ 741-51 (asserting claim under Illinois Whistleblower Reward and Protection Act), *and* ¶ 592 (referencing an exhibit consisting of an email from 2006 in support of allegations of a kickback scheme), *with* Compl. ¶ 36 ("since as

- 8 -

early as January of 2009"), *and* ¶ 37 ("Omnicare has permitted many nursing facilities with which it does business in Illinois to amass substantial accounts receivables"). Thus, Relator and the earlier-filed Ruscher Complaint allege the same material facts and are therefore related. *See Batty*, 528 F. Supp. 2d at 873.

Because Ruscher's action was pending when Relator filed his complaint, and because Relator alleges the same material elements, the portions of Counts I and II based on the A/R Conduct are jurisdictionally barred by the first-to-file rule and should be dismissed with prejudice.

### B. The Discounts Conduct Should Be Dismissed Under the FCA's and ICFPA's Public Disclosure Bar

The False Claims Act contains a "public disclosure" bar, which provides that:

The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed –

> (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;

> (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit or investigation; or

> (iii) from the news media,

unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A)(iii) (2010).

A "*qui tam* action would serve no purpose . . . [if] the government is already aware that it might have been defrauded and can take responsive action." *Glaser v. Wound Care Consultants, Inc.,* 570 F.3d 907, 913, 915 (7th Cir. 2009). Thus, the public disclosure bar was designed to deter "'me too' private litigation," *United States ex rel. Goldberg v. Rush Univ. Med. Ctr.,* 680

F.3d 933, 934 (7th Cir. 2012), by "'self-serving opportunists, who do not possess their own insider information . . . and . . . have nothing new to add.'" *Glaser,* 570 F.3d at 915 (citing *United States ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 740 (7th Cir. 2007)).

By the very language of the False Claims Act, a federal investigation triggers the public disclosure bar. § 3730(e)(4)(A)(iii); *see also Glaser*, 570 F.3d at 913 (finding that allegations were publically disclosed in an administrative investigation). An investigation need not be widely disseminated in order to be publicly disclosed. *Glaser*, 570 F.3d at 913. In fact, disclosure to an "official authorized to act for or to represent the community on behalf of the government" is public disclosure under the law. *United States v. Bank of Farmington*, 166 F.3d 853, 861 (7th Cir. 1999).

If a relator's allegations are found to be substantially the same[6] as allegations or transactions already publicly disclosed, he may avoid the jurisdictional bar only if he is an original source of those allegations. § 3730(e)(4)(A)(iii). To qualify as an original source under the FCA, Relator must establish that either, (1) prior to a public disclosure he voluntarily disclosed to the Government the information on which the allegations or transactions in a claim are based, or (2) has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and has voluntarily provided the information to the government before filing an action under this section. § 3730(e)(4)(A)(iii). At each stage of the jurisdictional analysis, the Relator bears the burden of proof. *Glaser*, 570 F.3d at 913.

---

[6] The public disclosure bar was amended to its current form in 2010. The prior version of the statute provided that courts did not have jurisdiction over an FCA action that was "based upon the public disclosure of allegations . . . ." *See* 31 U.S.C. § 3730(e)(4)(A) (2009). The Seventh Circuit interpreted "based upon" to mean "substantially similar to" the allegations already in the public domain. *See Glaser*, 570 F.3d at 910. Thus, the amendments expressly incorporate the Seventh Circuit standard. *Leveski v. ITT Educ. Serv.,* 719 F.3d 818, 828 n.1 (7th Cir. 2013).

Similarly, under the ICFPA, courts do not have jurisdiction if the complaint "is based upon the public disclosure of allegations or transactions in a(n) … investigation … unless the action is brought by the State's Attorney, the Attorney General, or a person who is an original source of the information."   740 ILCS 92/30(b) (2010).  An "original source" under the ICFPA is an "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the State's Attorney or Attorney General before filing an action under this Act based on the information." *Id.*

On March 1, 2011, over nine months before Relator filed his Complaint, the United States Department of Justice issued a Subpoena Duces Tecum to Omnicare requiring the production of documents and data related to agreements with customers, charges and costs for consultant pharmacist services from September 1, 2009 until the date of the subpoena.  A true and correct copy of the March 1, 2011 Subpoena is attached hereto as Exhibit D.[7]  This subpoena constitutes a public disclosure of an investigation by the Department of Justice of the identical conduct Relator alleges regarding improper discounts for consultant pharmacist services. *See* § 3730(e)(4)(A)(iii); *Glaser*, 570 F.3d at 913-14 (holding that a letter from the government to the defendant demanding repayment for improper use of certain billing codes was a public disclosure that the government was both aware of and investigating the conduct in question).

Further, Relator's allegations are nearly identical in all respects except timing to allegations contained in a first amended complaint filed on June 21, 2005 by relator Deborah Maguire on behalf of the United States against Omnicare, specifically alleging that Omnicare provided consultant pharmacist services at below-market rates as an inducement for business reimbursed under Federal health care programs, and as a result submitted false claims for

---

[7] The Court may properly consider this document to determine whether subject matter jurisdiction exists without converting this motion to dismiss into one for summary judgment. *See Capitol Leasing Co.*, 999 F.2d at 191.

payment.  First Am. Compl., *United States ex rel. Maguire v. Omnicare, Inc.*, No. 02-cv-11436-RGS (D. Mass. filed June 21, 2005), ECF No. 11.  A true and correct copy of the Maguire complaint is attached hereto as Exhibit E.[8]   All Relator has done is claim the alleged conduct continued after the Maguire complaint resulted in settlement, which is an allegation that was already under investigation by the federal government prior to Relator filing his Complaint.

While Relator alleges he is an original source of the information, the only statement in the Complaint to support this legal conclusion is that he "has knowledge of the false statements and/or claims that Omnicare submitted, or caused to be submitted, to the Government."  Compl. ¶ 15.  That is not what is required to qualify as an original source and so the Court need not take his legal conclusion as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[9]

Relator does not qualify as an original source because he does not allege that he voluntarily disclosed the information underlying his allegations to the government at any time. Nor are any of his allegations independent of and materially add to the public disclosure of the federal investigation.  Relator does not allege that he has any firsthand knowledge of his allegations, nor how he would have obtained it.  *See Leveski,* 719 F.3d at 837  (finding relator to be an original source where her allegations were based on conversations to which she was a party and specific to her, not second or third hand information learned from co-workers).  Relator does not allege that he worked with the anonymous customers he claims received the kickback or that he has any knowledge of the contracts, services provided, or payments made.  Nor does he allege

---

[8] Exhibit E is also available through the Court's PACER system.
[9] Even if this were sufficient to qualify as an original source, Relator has not pled any material information regarding the submission of allegedly false claims, and so the allegation that he has such knowledge is simply not supported by any facts.  Relator's lack of knowledge as to any false or fraudulent claim is evident from the lack of specificity in the Complaint, as set forth in Section VII, below.  The reason for this deficiency is obvious:  Relator's position as a Customer Service and Support Consultant does not provide him access to claims filed or records made by Omnicare's pharmacies relating to customer charges, as evidenced by his failure to plead any such access or knowledge.

how he came to know the facts to support his allegations. Relator does not deny that he may have become aware of the subpoena through his employment at Omnicare. Relator does not allege any information that would not have been included in Omnicare's response to the subpoena. As such, none of Relator's allegations were "necessary to alert the Government to fraud that otherwise would have gone unnoticed." *See United States ex rel. Osheroff v. Tenent Healthcare Corp.,* No. 10–24486–cv–SCOLA, 2012 WL 4479072, at *12 (S.D. Fla. Sept. 28, 2012) (finding relator was not an original source because his independent knowledge did not materially add to the information already in the public domain).

Relator's claims under the ICFPA are similarly barred, despite the differences in the statutory language. While the ICFPA uses the pre-amendment "based upon" standard, as noted above, the Seventh Circuit interpreted this to mean "substantially the same as." *Glaser*, 570 F.3d at 910. For the reasons stated above, Relator's allegations are substantially the same as the information disclosed in the federal investigation. With respect to the original source standard, Relator does not qualify under the state definition of an individual with "direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the State's Attorney or Attorney General before filing an action." 740 ILCS 92/30(b). He has not alleged the basis for inferring that he has firsthand knowledge of the information and does not allege that he provided this information to the Illinois government before filing this action.

For these reasons, the portions of Counts I and III based on the Discounts Conduct are jurisdictionally barred by the FCA's public disclosure bar and should be dismissed with prejudice.

## VI.   RELATOR'S CLAIMS DO NOT STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Relator fails to state a claim under all three relevant statutes because he has failed to sufficiently plead kickback violations on which his claims are premised.  Specifically, Relator fails to sufficiently allege improper remuneration with respect to each of the alleged schemes at issue in his Complaint.  A Rule 12(b)(6) motion "challenges the sufficiency of the complaint to state a claim upon which relief may be granted."  *United States ex rel. Upton v. Family Health Network, Inc.*, 900 F. Supp. 2d 821, 826 (N.D. Ill. 2012) (quoting *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009)).  To survive a motion to dismiss, a complaint "must state a claim to relief that is plausible on its face, which in turn requires sufficient factual allegations to permit the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."  *Engel v. Buchan*, 710 F.3d 698, 709 (7th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566, 570 (2007) (internal quotations omitted)).

### A.   Allegations of False Claims Arising from Kickback Violations Must Be Dismissed if Certain Pleading Requirements Are Not Met

Pursuant to the FCA, it is unlawful to knowingly present, or cause to be presented, a false or fraudulent claim for payment or approval to the United States Government, or to knowingly make, use or cause to be made or used, a false record or statement material to a false or fraudulent claim.  31 U.S.C. § 3729(a)(1)(A) (2010); § 3729(a)(1)(B) (2010).  *See also United States ex rel. Marquis v. Northrom Grumman Corp.*, No. 09 C 7704, 2013 WL 951095, at *2 (N.D. Ill. Mar. 12, 2013).  The term "knowingly" means that a person has actual knowledge, acted in deliberate ignorance of the truth or falsity or acted in reckless disregard of the truth or

falsity of information. *Id*. § 3729(b). The Illinois False Claims Act contains the same elements as the federal FCA in all material respects. 740 ILCS 175/3.

Relator premises each of his six allegations that Omnicare violated the FCA and the IFCA on the basis that Omnicare violated federal and state anti-kickback laws. The Federal Anti-Kickback Statute ("AKS"), codified at 42 U.S.C. § 1320a-7b(b), prohibits among other things, offering or paying any remuneration to any person to induce such person to purchase any good for which payment may be made in whole or in part under a Federal health care program. *See United States ex rel. Grenadyor v. Ukranian Village Pharmacy, Inc.,* 895 F. Supp. 2d 872, 878 (N.D. Ill. 2012) (citing § 1320a–7b(b)(2)(B)).[10] A violation of the AKS requires intent to induce referral of federal health care program business. *See United States ex rel. Klaczak v. Consol. Med. Transp*., 458 F. Supp. 2d 622, 675 (N.D. Ill. 2006) ("The AKS also requires a showing of willfulness by a defendant to ground liability."); *see also Osheroff*, 2012 WL 2871264, at *8 ("Relator must allege that offers or payments of remuneration to induce illegal referrals were done knowingly and willfully."). There is no private right of action under the AKS. *United States ex rel. Barrett v. Columbia/HCA Healthcare Corp*., 251 F. Supp. 2d 28, 37 (D.D.C. 2003).

In order to establish FCA liability against Omnicare in this case, Relator must plead facts that if proven will establish that Omnicare violated the AKS. *See Osheroff,* 2012 WL 2871264, at *7 (finding that a relator "will be required to plead facts with particularity showing a violation of . . . AKS in order to show that any certification of compliance with . . . AKS is false."). Thus, Relator must plead a plausible violation of the AKS with sufficient supporting facts,

---

[10] Relator also alleges Omnicare's conduct violated the Illinois Public Aid Code, 305 ILCS 5/8A-3(b), and the Illinois Insurance Claims Fraud Prevention Act, 740 ILCS 92/5, which contain the same elements as the AKS, including unlawful remuneration. Thus, Relator's failure to allege unlawful remuneration, constitutes a failure to plead violations of these state statutes as well. For simplicity, Omnicare will refer to all three statutes as "AKS."

including that Omnicare (1) knowingly and willfully (2) offered or paid (3) remuneration (4) in return for purchasing or ordering any item or service for which payment may be made under a federal health care program. § 1320a-7b(b).

Generally, the term "remuneration" is defined broadly to mean "anything of value." *See Klaczak*, 458 F. Supp. 2d at 678. However, the AKS does not "define 'value' in the context of discounts for services," and so "courts use 'fair market value' as the gauge of value when assessing the remuneration element of the offense." *Id.* at 678-79 (citing *United States ex rel. Obert-Hong v. Advocate Health Care*, 211 F. Supp. 2d 1045, 1049 & n.2 (N.D. Ill. 2002)). Moreover, providing a product or service at below fair market value does not equate to a violation of the AKS.

In order to plead an AKS violation, Relator must allege some basis from which the court could infer that there was an unlawful remuneration. *See, e.g.*, *Obert-Hong*, 211 F. Supp. 2d at 1049 (finding a relator's complaint deficient where it did not allege what was unreasonable about the transactions at issue, noting that the court "cannot presume them to be unreasonable; the complaint must particularly allege facts showing that they are"); *Osheroff*, 2012 WL 2871264, at *7 (finding that to plead a below-fair-market-value exchange with particularity, a relator "must allege a benchmark of fair market value against which [defendants' transactions] can be tested" because without those allegations, it is impossible for the court to infer that the transactions constitute remuneration).

**B.** **Relator Fails to State a Claim Because He Has Not Sufficiently Plead Kickback Violations on Which His Claims Are Premised**

Relator's Complaint should be dismissed because not one of his theories of liability sufficiently pleads a kickback violation. With respect to the A/R Conduct, Relator offers no

- 16 -

support for his theory that allowing clients to amass accounts receivable balances constitutes unlawful remuneration under the AKS. Notably, despite Relator's characterization of Omnicare's conduct as "Forgiveness of Accounts Receivable," Compl. at 9, and the conclusory allegation that "Omnicare has engaged in a pattern and practice of forgiving, expressly or implicitly," accounts receivable from certain unnamed clients, Compl. ¶ 48, Relator has not alleged any factual basis to support an inference that Omnicare ultimately failed to collect these balances. Though Relator alleges that one Omnicare employee "explicitly told one or more officers from Clients A-E that they need not worry about the accounts receivable," Compl. ¶ 48, this does not suggest that the amounts were actually forgiven, written off, credited, or otherwise not subject to collection. Relator does not allege that this employee had the authority to write off these balances. Nor does Relator explain how he knows that the employee made this statement to "one or more" people. Relator's failure to plead these facts is not surprising, given that he was not responsible for – or even involved with – collection of customer accounts. In short, an allegation of one employee colloquially telling a customer "not to worry" cannot support an AKS claim without identifying the customer and alleging the amounts owed and when and for what purpose these amounts were allegedly forgiven. Because Relator has not alleged that Omnicare actually forgave these balances, he has failed to plead any unlawful remuneration.[11]

Relator's allegations underlying the Discounts Conduct also fail to sufficiently allege unlawful remuneration in violation of the AKS. Relator alleges that the CIA requires Omnicare to charge a certain fee for consultant pharmacist services and claims that charging a lesser rate constitutes a kickback. As noted above, Relator is demonstrably wrong and the CIA does not

---

[11] As noted below in Part VII, Relator has completely failed to allege when any such amount was written off, who approved the write off, or the amount of any such write off. This failure to plead the particulars of the alleged scheme alone provides grounds for dismissal.

contain any such requirement. Therefore, Relator has not pled any unlawful kickback with respect to these services.

With respect to the Refunds and Credits Conduct, Relator alleges no basis for his conclusion that the customers were not entitled to any such credits or refunds, or that the credits or refunds were actually given. His speculation that the credits or refunds were given and were improper is insufficient. *United States ex rel. Foster v. Bristol-Myers Squibb Co.*, 587 F. Supp. 2d 805, 824 (E.D. Tex. 2008) (finding complaint insufficient where relator provides no factual support or explanation for his belief that kickbacks induced doctors to prescribe defendant's drugs).

Similarly with respect to the SigmaCare Conduct, Relator again fails to allege facts to support an inference that the alleged discount Omnicare offered for the SigmaCare product constituted unlawful remuneration. Relator does not make any allegations regarding the fair market value of the product, or the value of the discount, so there is no benchmark to conclude that any such discount was below fair market value.

As to the Free Services Conduct, Relator again does not allege the value of the services provided. Relator acknowledges that the services are provided pursuant to Omnicare's contracts with its customers, Compl. ¶ 28, but does not explain why Omnicare must charge a separate fee for these services. [12]

---

[12] Notably, pursuant to the CIA, all of Omnicare's new and renewed arrangements and transactions with customers are subject to legal review by counsel with expertise in the AKS to ensure the arrangements do not violate the AKS, Exhibit A pp. 13-14 ("Compliance with Anti-Kickback Statute"), and an independent review organization engaged pursuant to the CIA reviews a random sample of twenty-five arrangements each year to assess that Omnicare complied with the CIA for each of those arrangements. Exhibit A p. 22 ("Arrangements Review"). Additionally, the CIA requires Omnicare to retain and make available to the OIG for inspection, all of its arrangements with customers. Exhibit A p. 15 ("Records Retention and Access"). This fact undermines any notion that Omnicare's contractual provision of consulting and advisory services to customers constituted unlawful remuneration.

Relator's allegations regarding the Omnicare Foundation Conduct fail to state a violation of the AKS as well. Relator offers no facts at all supporting his characterization of the donations at issue in the scheme as unlawful remuneration. *See Mason v. Medline Indus., Inc*., No. 07 C 5615, 2009 WL 1438096, at *4 (N.D. Ill. 2009). In *Mason*, the court found that relator's allegations that defendant paid kickbacks and bribes to healthcare providers though donations made by defendant's charitable foundation failed, in part because the relator did not provide any detail suggesting defendant and the healthcare providers reached an understanding as to an illicit purpose of the donations. *Id.* Similarly, here Relator has not identified any details suggesting Omnicare and its customers reached an understanding as to an illicit purpose of the donations. For example, Relator does not allege that the owner of Client N indicated that if Omnicare made payments to subsidize his sons' hobby, Client N would continue or grow its business with Omnicare. *See* Compl. ¶ 86.

## VII.    <u>RELATOR'S CLAIMS SHOULD BE DISMISSED UNDER RULE 9(B)</u>

The FCA "is an anti-fraud statute and claims under it are subject to the heightened pleading requirements of Rule 9(b)." *Fowler,* 496 F.3d at 740 (quoting *United States ex rel. Gross v. AIDS Research Alliance–Chicago,* 415 F.3d 601, 604 (7th Cir. 2005)).[13] Rule 9(b) provides, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "Particularity" means that "[a] complaint alleging fraud must provide the who, what, when, where and how." *Fowler,* 496 F.3d at 740 (internal quotation marks and citations omitted). "Scant and highly generalized allegations regarding the making of any false claims" are not sufficient under Rule 9(b).

---

[13] Claims alleged under the IFCA and ICFPA are also subject to the requirements of Rule 9(b). *See Upton,* 900 F.Supp.2d 821, 828 (N.D. Ill. 2012) (finding that pleading standard under the IFCA was the same under the FCA); *United States v. Warden*, No. 07 C 4107, 2011 WL 6400351, at *3 (N.D. Ill. Dec. 11, 2011) (applying Rule 9(b) to relator's ICFPA claim); *Ackerman v. Nw. Mut. Life Ins. Co.,* 172 F.3d 467, 469 (7th Cir. 1999) (noting that Rule 9(b) applies to all fraud claims brought in federal court, including state law claims).

*Marquis,* 2013 WL 951095, at *3. A dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6). *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899 (5th Cir. 1997); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n.5 (4th Cir. 1999).

The particularity requirement of Rule 9(b) is designed to discourage a "sue first, ask questions later" philosophy. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011). "Greater precomplaint investigation is warranted in fraud cases because public charges of fraud can do great harm to the reputation of a business firm or other enterprise (or individual)." *Ackerman*, 172 F.3d at 469 (citations omitted). A precomplaint investigation conducted in sufficient depth "[assures] that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Id.*

In the Seventh Circuit, "a plaintiff generally cannot satisfy the particularity requirement of Rule 9(b) with a complaint that is filed on information and belief." *Pirelli*, 631 F.3d at 442. This rule "is not ironclad, however: the practice is permissible, so long as (1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides the 'grounds for his suspicions.'" *Id.* at 443 (citing *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918 (7th Cir. 1992)). "The grounds for plaintiff's suspicions must make the allegations plausible." *Id.* Allegations based on information and belief that are not supported by such grounds of suspicion must be disregarded. *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 684 (7th Cir. 1992).

## A.    <u>Relator Fails To Identify Any False Claims As Required By Rule 9(B)</u>

Relator fails to meet the basic burden under Rule 9(b) for an FCA case – the identification of actual false claims. As such, the case should be dismissed. *See United States ex*

*rel. Soulias v. Nw. Univ.*, No. 10 C 7233, 2013 WL 3275839, at *3-4 (N.D. Ill. June 27, 2013) (dismissing relator's complaint where it failed to include some actual examples of false claims); *see also Fowler*, 496 F.3d at 741-42 (affirming dismissal of claims where relators did not present any allegations "at an individual transaction level to demonstrate that [defendant] failed to provide an appropriate refund or replacement product for a returned prescription"); *United States ex rel. Garst v. Lockheed–Martin Corp.*, 328 F.3d 374, 375-77 (7th Cir. 2003) (affirming dismissal where relator repeatedly failed to heed the district court's instructions to identify specific false claims); *Upton*, 900 F. Supp. 2d at 828 ("To survive a motion to dismiss, Relators must identify specific false claims for payment or specific false statements made in order to obtain payment."); *United States ex rel. Bragg v. SCR Med. Transp., Inc.*, No. 07 CV 2328, 2011 WL 1357490, at *3 (N.D. Ill. Apr. 8, 2011) (a relator "is required to plead specific and concrete examples of . . . false claims"); *United States ex rel. Wildhirt v. AARS Forever, Inc.*, No. 09 C 1215, 2011 WL 1303390, at *3 (N.D. Ill. Apr. 6, 2011) (a relator "must plead with particularity the details of *actual claims* submitted to the government") (quotations and citation omitted) (emphasis in original). Relator must also allege with particularity the actual submission of a fraudulent claim to the government that was impacted by a kickback. *See United States ex rel. Geschrey v. Generations Healthcare, LLC*, 922 F. Supp. 2d 695, 704-05 (N.D. Ill. 2012) ("Defendants are correct that '[t]he False Claims Act does not create liability merely for a health care provider's disregard of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe.'").

Contrary to the requirements of the Seventh Circuit, Relator does not identify a single claim Omnicare submitted or caused to be submitted to the government, let alone identify any

claim which was tainted by the alleged kickbacks.[14]  Nor does Relator allege any date on which claims were submitted, the identities of individuals who submitted claims, where claims were submitted, and the amounts of claims.  Instead, Relator merely outlines the processes by which all providers seeking Medicaid reimbursement submit applications and claims to the government, *see* Compl. ¶¶ 96-101, and alleges that "[u]pon information and belief, Omnicare has submitted and continues to submit thousands of . . . claims for pharmaceutical products dispensed to residents of nursing facilities in Illinois."  Compl. ¶ 99.  Such allegations do not satisfy a relator's burden to specifically identify false claims Omnicare submitted or caused to be submitted to the government.  *Gross*, 415 F.3d at 605 ("These conclusory allegations shed no light on the nature or content of the individual forms or why any particular false statement would have caused the government to keep the funding spigot open, much less when any payments occurred or how much money was involved.").

Moreover, Relator's oversimplified allegations regarding the alleged submission of claims are insufficient because he pleads these allegations "upon information and belief." Compl. ¶ 99.  Yet, Relator has not alleged that the information regarding these allegedly false claims is unavailable to him, nor the grounds for his suspicions that such claims exist.  *Pirelli*, 631 F.3d at 442-43; *Bankers Trust*, 959 F.3d at 684.

---

[14] The need for specific examples of false claims, and when such claims were submitted, is especially critical in this case because of recent changes to the law.  In 2010, the AKS was amended to provide that "a claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim for purposes of [the False Claims Act]."  § 1320a-7b(g).  This amendment does not apply retroactively to conduct occurring prior to its effective date of March 23, 2010.  *See Graham Cnty. Soil & Water Conservation Dist. v. United States*, 130 S. Ct. 1396, 1400 n.1 (2010).  Prior to this amendment, an FCA claim premised on an AKS violation would have been based on the implied false certification theory, which has not yet been explicitly accepted by the Seventh Circuit. *See, e.g., Grenadyor*, 895 F. Supp. 2d at 880-81 (noting it "is doubtful that implied false certifications are recognized by the Seventh Circuit," that an "underlying AKS [violation] won't support an implied false certification claim," and that the AKS amendment did not apply to relator's allegations which took place from 2006 through 2008) (citing *United States ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818, 824 n.4 (7th Cir. 2011); *United States ex rel. Kennedy v. Aventis Pharms., Inc.*, 610 F. Supp. 2d 938, 946-47 (N.D. Ill. 2009); and *Graham Cnty*, 130 S. Ct. at 1400 n.1)).  Because of this critical change in the law, without any allegations regarding when a specific false certification was filed, Omnicare cannot know what law applies to its conduct.

In *Soulias*, the court noted that when the relator alleged that "she was personally aware of instances in which the hospital received double payment for the same medical treatment," "it should not be difficult [for her] to identify actual instances of double billing." 2013 WL 3275839, at *4. Thus, while that relator was not required to remember and identify specific patient names, she was "still required to provide some actual examples of the double billing she [alleged], with enough specificity to satisfy Rule 9(b)." *Id.* Here, Relator alleges that he "has knowledge of the false statements and/or claims that Omnicare submitted, or caused to be submitted, to the Government as alleged herein," Compl. ¶ 15, but does not allege any specific facts regarding such claims. If Relator has such knowledge, he should be able to identify the claims with enough specificity to satisfy Rule 9(b), which he does not do. As a result, he has failed to satisfy Rule 9(b) and the Complaint should be dismissed.

**B.**     **Relator's Kickback Allegations Which Form the Predicate of Each of His Claims Are Not Plead With The Requisite Particularity Under Rule 9(B)**

Even if Relator were able to identify an actual claim submitted by Omnicare to the government for payment, Relator's allegations still fail because he does not provide sufficient details regarding the kickback schemes at issue in his Complaint. The elements of Relator's AKS allegations must also be plead with particularity under Rule 9(b). *See, e.g., Obert-Hong*, 211 F. Supp. 2d at 1049 (dismissing FCA claim premised on AKS violation where relator did not plead the AKS violation with particularity); *United States ex rel. Grandeau v. Cancer Treatment Centers of Am.,* No. 99 C 8287, 2005 WL 2335567 (N.D. Ill. Aug. 19, 2005) (same); *Osheroff*, 2012 WL 2871264, at *7 (requiring relator to plead facts with particularity showing a violation of the AKS in order to show that a certification of compliance with the AKS is false).

Relator's allegations with respect to each of the six schemes are insufficiently particular under Rule 9(b). First, Relator does not identify by name the customers involved, and has

refused to do so.[15]  In *Goldberg*, the court stated that the "the purpose of the 'who' question is to make sure the defendants know what claims are being brought against them."  2013 WL 870651, at *9.  It is impossible for Omnicare to know what claims are being brought against it if it does not know the customers to which it allegedly paid kickbacks.

Second, Relator has not adequately alleged "when" certain schemes occurred.  Specifically as to the A/R Conduct and the Omnicare Foundation Conduct, Relator fails to provide even the year of the conduct, let alone the month or date.  In *Goldberg,* the court found that relators alleged "when" the fraud occurred with sufficient specificity because the complaint provided specific examples of the alleged fraud that occurred on specific dates in 1996, 2004, and 2005 and alleged that relator voiced his concerns about the fraud to senior officers of defendant repeatedly between 1999 and 2004.  *Id*. at *10.  Here Relator does not allege such details in his Complaint.

Relator also does not allege "where" the fraud occurred.   The relator in *Goldberg* provided the names of the medical centers and even the operating rooms where the alleged fraud occurred.  *Id. at* *10.  In contrast, while in one instance, Relator identifies where an unnamed client is headquartered, Compl. ¶ 42, he does not specify the location of the nursing facilities which the client operates or where any of the underlying conduct took place.  In other examples, Relator states only that clients operate facilities in "the State of Illinois, "central Illinois," or "northern Illinois."  *Id.* ¶¶ 38, 40, 44, 46.  These vague allegations make clear that Relator has not conducted the pre-complaint investigation that Rule 9(b) requires.  *See Ackerman*, 172 F.3d at 469.

---

[15] Prior to filing this motion, undersigned counsel requested the identities of the customers that Relator anonymously refers to in the Complaint.  Counsel for Relator declined this request.  Attached as Exhibit F is a true and correct copy of the July 23, 2013 email correspondence among counsel.

In many instances, Relator fails to allege "what" occurred in violation of the AKS. Regarding the Discounts Conduct, Relator fails to articulate what about Omnicare's conduct was fraudulent. As noted above, Relator's premise that the CIA requires Omnicare to charge a certain fee for consultant pharmacist services is incorrect, and so Relator has not alleged what was unlawful about Omnicare's conduct.

Regarding the Refunds and Credits Conduct, Relator alleges with regard to each credit only that, "on information and belief, there was in fact no legitimate accounting basis for this 'credit,'" Compl. ¶¶ 61, 64, 67, 70, 73. Relator does not state that the information regarding whether or not there was a legitimate accounting basis for these credits is not accessible to him, nor does he provide the grounds for his suspicions. Relator also offers no facts to support an inference that the credits were not legitimate accounting corrections. As such, these allegations must be disregarded. *Pirelli*, 631 F.3d at 442-443; *Bankers Trust*, 959 F.3d at 684. Without them, there is no basis from which to infer that there was any unlawful remuneration.

Additionally, regarding the SigmaCare Conduct Relator pleads generally that "on numerous occasions" SigmaCare was offered to nursing facilities at a "substantial discount," Compl. ¶ 76, but offers only one specific example of such an occasion with regard to an agreement entered into with "Client M." Nevertheless, in addition to not specifying the name of Client M, Relator offers no details regarding "where" Client M does business or "what" the substantial discount offered to Client M was. Relator states only that "the discount [offered to Client M] was so substantial that it not only negated Omnicare's commission from SigmaCare, but resulted in Omnicare having to pay SigmaCare for a substantial portion of the costs of that service to Client M." *Id*. ¶ 77. If Relator was personally aware that the "substantial discount" given to Client M negated Omnicare's commission from SigmaCare, Relator should also be able

to provide the specific "substantial discount" offered to Client M.  *See Soulias,* 2013 WL 3275839, at *4.

As to the Free Services Conduct, Relator does not allege "who" received this kickback as he fails to specify any specific client involved in this scheme, even by a generic descriptor.  Nor does Relator allege "when" or "where" the conduct took place.

Regarding the Omnicare Foundation Conduct, Relator does not identify the recipient or the amount of any such payment.  Relator also does not allege "where" or "when" the conduct occurred.  Rather, Relator states only that the allegedly improper payments occurred "during the last six years," without alleging the dates on which any payments were actually made.  Compl. ¶ 85.

Relator fails to adequately plead his fraud-based claims and there is no reason to believe he can do so, given the lack of requisite specificity in any detail and Relator's job function.  Thus, his Complaint should be dismissed.

## VIII.  <u>CONCLUSION</u>

As set forth above, Relator's Complaint should be dismissed for several independent reasons.  First, two of Relator's alleged schemes were already known to the government prior to Relator's filing of this lawsuit, and he has not established that he can properly assert those claims under the FCA.  Second, Relator has failed to state a claim under the FCA because he has not adequately alleged any violation of the AKS on which his theories of liability are based, particularly given the bases for certain of Relator's allegations are plainly incorrect or unexplained.  Finally, Relator has not pled his allegations of fraud with the particularity required by the Federal Rules of Civil Procedure.  For each of these reasons, independently and taken together, Omnicare requests that the Court dismiss Relator's Complaint in its entirety.

Dated:  September 16, 2013

Respectfully submitted

*Counsel for Defendant Omnicare, Inc.*

   /s/

Denise M. Ware
REED SMITH LLP
10 South Wacker Dr.
40th Floor
Chicago, IL 60606
Telephone: (312) 207-1000
Facsimile: (312) 207-6400
Email: dware@reedsmith.com

Eric A. Dubelier
Katherine J. Seikaly
REED SMITH LLP
1301 K Street, NW
Suite 1100 – East Tower
Washington, D.C. 20005
Telephone: (202) 414-9200
Facsimile: (202) 414-9299
Email: edubelier@reedsmith.com
Email: kseikaly@reedsmith.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of September 2013, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

**United States Attorney's Office, NDIL**
(usailn.ecfausa@usdoj.gov)
219 South Dearborn Street
Suite 500
Chicago, IL 60604

**Robert H. Smeltzer**
rsmeltzer@lowis-gellen.com
200 West Adams Street
Suite 1900
Chicago, IL 60606

**Kevin J. Clancy**
kclancy@lowis-gellen.com
200 West Adams Street
Suite 1900
Chicago, IL 60606

    /s/Kate Seikaly
Katherine J. Seikaly
REED SMITH LLP
1301 K Street, NW
Suite 1100 – East Tower
Washington, D.C. 20005
Telephone: (202) 414-9200
Facsimile: (202) 414-9299
Email: kseikaly@reedsmith.com