## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and<br>THE STATE OF ILLINOIS, ex rel.,<br>ALAN J. LITWILLER,<br><br>       Plaintiff-Relator,<br><br>   v.<br><br>OMNICARE, INC.,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 11-cv-8980<br>)<br>)   Judge Robert M. Dow, Jr.<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

Plaintiff-Relator Alan J. Litwiller brings a three-count complaint against his employer, Omnicare, Inc., alleging violations of the federal False Claims Act, the Illinois False Claims Act, and the Illinois Insurance Claims Fraud Prevention Act. Litwiller maintains that Omnicare submitted false statements and records to the United States and the State of Illinois in violation of federal and state anti-kickback statutes. This matter is before the Court on Defendant's motion to dismiss Plaintiff-Relator's complaint [28]. For the reasons set forth below, the Court grants in part and denies in part Omnicare's motion to dismiss [28].

## I.    Background[1]

### A.    Procedural Background

Plaintiff-Relator Litwiller ("Relator" or "Litwiller") filed his complaint under seal on December 19, 2011, alleging violations of federal False Claims Act ("FCA"), the Illinois False Claims Act ("IFCA"), and the Illinois Insurance Claims Fraud Prevention Act ("IICFPA"). On March 23, 2013, the United States filed a notice of its decision not to intervene, and stated that the

---

[1] For purposes of Defendant's motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint. See, *e.g., Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

State of Illinois, by its Attorney General, concurred in the decision not to intervene. That same day, the Court ordered that the complaint be unsealed and served upon Omnicare. Relator requested that Omnicare waive service of a summons, which Omnicare agreed to do, and Omnicare subsequently moved to dismiss the complaint in its entirety.

## B. Factual Background

Since 1997, Litwiller has been employed by Omnicare. Omnicare is an institutional pharmacy and one of the nation's largest providers of pharmaceutical products and services to nursing facilities, long-term care facilities, assisted living communities, and other chronic care settings ("the facilities"). Payments for Ominicare's pharmaceutical products and services come in large part through Medicare and Medicaid.

Litwiller alleges that during the period of at least January 2009 through the present, Omnicare has engaged in a series of schemes to offer and pay illegal inducements (including credits, rebates, payments, free services and discounted products and services) to induce facilities to purchase or continue purchasing products and services reimbursed through Medicare and Medicaid. In seeking reimbursement from Medicaid, Omnicare was required to and did certify that it complied with all anti-kickback statutes on each claim submitted. According to Litwiller, each certification was false and thus each claim submitted to Medicaid was false, because Omnicare in fact was in violation of federal and state anti-kickback statutes at the time of each relevant claim. As a result, Litwiller alleges that Omnicare received millions of dollars in payments from federal and state funds to which it was not entitled. The complaint alleges that Omnicare developed and implemented the following specific schemes.

### 1. *"Forgiveness of Accounts Receivable"*

Litwiller alleges that as early as January 2009, Omnicare—at the direction of its Regional Vice President of Pharmacy Services for the Illinois Region, A. Samuel Enloe ("Enloe")—

engaged in a pattern and practice of agreeing to forego payment of bills for many of its customers, in exchange for and as an inducement for the facilities to continue purchasing purchase lucrative prescription medications from Omnicare. As a result, Omnicare permitted many nursing facilities with which it does business in Illinois to amass substantial accounts receivables, often comprised in large part or entirely of charges for pharmaceutical services and non-prescription products. Relator does not identify the customers by name or allege that the accounts were not eventually collected.

2.        *"Improper Discounts for Pharmaceutical Services"*

In October 2009, pursuant to a consent decree with the U.S. Department of Justice, Omnicare entered into an Amended and Restated Corporate Integrity Agreement ("CIA") with the Department of Justice.   Pursuant to the CIA, a policy was allegedly implemented whereby Omnicare would charge a fee for pharmaceutical services that reflected the real value of those services.   Relator alleges that rather than implement this policy with regard to favored customers in Illinois, Enloe agreed to provide improper discounts for those services, as an inducement to keep key customers.   Relator does not identify the customers by name or any specific claims that were affected.

3.        *"Improper Refunds and 'Credits'"*

Litwiller alleges that Omnicare learned that certain facilities were threatening to terminate their relationships with Omnicare, or were being solicited by competitors.   In response, Omnicare allegedly contacted those customers and claimed it had conducted a review of its prior billing records, determined it had overcharged the clients by various amounts (ranging from $60,000 to $300,000), and offered the customers a "credit" of those amounts.   Relator alleges that there was no legitimate accounting basis for these "credits."   Relator does not identify the customers by name or any specific claims that were affected.

        4.         *"Discounts and Subsidies for Third Party Services"*

In or around March 2009, Omnicare entered into a financial arrangement with SigmaCare, an electronic medical records management company, in which Omnicare would sell SigmaCare services and programs to facilities. For at least the period of October 2009 through December 2011, Relator alleges that Patrice Johnson, an Omnicare employee, promoted and sold SigmaCare products and services to nursing facilities throughout Illinois. Relator alleges that on numerous occasions, Onmincare offered SigmaCare at a substantial discount from regular prices to any facility that agreed enter into a fixed, multi-year agreement with Omnicare for the provision of pharmaceutical products and services. This resulted in Omnicare either receiving a lower commission from SigmaCare, or Omnicare directly paying some of the cost for the SigmaCare services and programs. According to the complaint, Omnicare offered these discounts and payments to the facilities to enter into long-term agreements for the provision of pharmaceutical products and services. Relator does not identify the customers by name or any specific claims that were affected.

        5.         *"Free Consulting Services and Other Services"*

In November 2010, Omnicare instituted a policy to charge $65 per hour for pharmacy and other consulting services that it provided to nursing facilities. According to the complaint, Enloe complained to officers at Omnicare's corporate headquarters that this policy placed him at a competitive disadvantage in the Illinois region. Enloe allegedly persuaded those officers to change the policy so that Omnicare would only charge this fee for services that were mandated by regulation, and all other consulting and advisory services that Omnicare provided to nursing facilities would be provided for free. Relator does not identify the customers who received free services.

        6.         *"Omnicare Foundation"*

For over 12 years, Omnicare operated the Omnicare Foundation, which was formed as a charitable organization. In Illinois, the foundation was administered by Vernon Gideon, a registered pharmacist for Omnicare of Northern Illinois. Gideon operated under the direction and instructions of Enloe. The complaint alleges that various customers of Omnicare asked Enloe to have the foundation make payments on the customers' behalf to various organizations or entities, and that Enloe mischaracterized these payments as charitable contributions, when in many instances they were actually indirect payments to the owners of the nursing facilities.

## II.    Legal Standards

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint, not the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss under Rule 12(b)(6), the Court takes as true all factual allegations in Plaintiff's complaint and draws all reasonable inferences in its favor. *Killingsworth*, 507 F.3d at 618. To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at

555) (ellipsis in original). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *cf. Scott v. City of Chi.*, 195 F.3d 950, 952 (7th Cir. 1999) ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole.").

The standard that the Court applies to a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on the purpose of the motion. See *Apex Digital, Inc. v. Sears, Roebuck & Co.,* 572 F.3d 440, 443–44 (7th Cir. 2009); *United Phosphorus, Ltd. v. Angus Chem. Co.,* 332 F.3d 942, 946 (7th Cir. 2003) ( *en banc* ), *overruled on other grounds by Minn–Chem, Inc. v. Agrium, Inc.,* 683 F.3d 845 (7th Cir. 2012). If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction, the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. See *Apex Digital,* 572 F.3d at 443–44; *United Phosphorus,* 322 F.3d at 946. If, however, the defendant denies or controverts the truth of the jurisdictional allegations, the Court may look beyond the pleadings and view any evidence submitted to determine if subject matter jurisdiction exists. See *Apex Digital,* 572 F.3d at 443–44; *United Phosphorus,* 322 F.3d at 946. "Where jurisdiction is in question, the party asserting a right to a federal forum has the burden of proof, regardless of who raised the jurisdictional challenge." *Craig v. Ontario Corp.,* 543 F.3d 872, 876 (7th Cir. 2008); see also *Reed v. Illinois*, 2014 WL 917270, at *2 (N.D. Ill. Mar. 10, 2014).

Where a complaint sounds in fraud, the allegations of fraud must satisfy the heightened pleading requirements of Rule 9(b). Fed. R. Civ. P. 9(b); see also *Borsellino v. Goldman Sachs Group, Inc.,* 477 F.3d 502, 507 (7th Cir. 2007) (citing *Rombach v. Chang,* 355 F.3d 164, 170–71 (2d Cir. 2004)). The False Claims Act "is an anti-fraud statute and claims under it are subject to the heightened pleading requirements of Rule 9(b) * * *." See *U.S. ex rel. Gross v. Aids Research Alliance-Chicago*, 415 F.3d 601, 604 (7th Cir. 2005); see also *U.S. ex rel. Garst v. Lockheed-*

*Martin Corp.*, 328 F.3d 374, 376 (7th Cir. 2003). Rule 9(b) states that for "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). A complaint satisfies Rule 9(b) when it alleges "the who, what, when, where, and how: the first paragraph of a newspaper story." *Borsellino,* 477 F.3d at 507 (quoting *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990)). Rule 9(b), read in conjunction with Rule 8, requires that the plaintiff plead "the time, place and contents" of the purported fraud. *Fujisawa Pharm. Co., Ltd. v. Kapoor,* 814 F. Supp. 720 (N.D. Ill. 1993). "The purpose of this heightened pleading requirement is to 'force the plaintiff to do more than the usual investigation before filing his complaint.'" *Amakua Dev. LLC v. H. Ty Warner,* 411 F. Supp. 2d 941, 953 (N.D. Ill. 2006) (citations and internal quotation marks omitted).

## III.    Analysis

To combat fraud, the False Claims Act imposes civil liability on a party who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" paid by the government. 31 U.S.C. § 3729(a)(1)(A) & (B). From a practical standpoint, it would be impossible for the government alone to unmask and prosecute all potential FCA violations. Accordingly, the statute provides a *qui tam* enforcement mechanism, which allows a private party (*i.e.*, a relator) to bring a lawsuit on behalf of the government and against an entity to recover money the government paid as a result of fraudulent claims. See 31 U.S.C. § 3730(b). A *qui tam* complaint is filed *in camera* and remains under seal for at least 60 days. 31 U.S.C. § 3730(b)(2). During this period, the relator must present all material evidence to the government, and the government investigates and decides whether to intervene and proceed with the action itself. 31 U.S.C. § 3730(b)(2); *U.S. ex rel. Chandler v. Cook Co., Ill.,* 277 F.3d 969, 973 (7th Cir. 2002). If the government takes over the case, the relator can receive between 15 and

25 percent of the government's recovery, depending on the extent to which the relator contributed to the prosecution of the action, plus reasonable expenses. 31 U.S.C. § 3730(d)(1). If the government declines to intervene, the relator may proceed with the action on his or her own. 31 U.S.C. § 3730(b)(4)(B). If successful, the relator can receive between 25 and 30 percent of any recovery obtained, plus reasonable expenses. 31 U.S.C, § 3730(d)(2).

Under subsection (A) of § 3729(a)(1), a relator must prove that (1) there was a false or fraudulent claim; (2) Defendant knew the claim was false; and (3) Defendant presented the claim or caused it to be presented to the United States for payment or approval. *United States ex rel. Fowler v. Caremark RX, LLC,* 496 F.3d 730, 740–41 (7th Cir. 2007). Here, Relator alleges that Omnicare engaged in unlawful inducements to facilities to secure business in violation of anti-kickback statutes. According to Relator, Omnicare submitted claims for payment to government sources on a "near daily basis," each time falsely certifying that it was in compliance with anti-kickback statutes. In turn, Omnicare argues that certain claims are barred by the first-to-file and the public disclosure rules; that the complaint falls short under Rule 12(b)(6) because it fails to allege knowledge by Omnicare or that any products or services were offered at below fair market value; and that the complaint fails to comply with Rule 9(b).

### A.    Jurisdiction Over Accounts-Receivable Conduct

Because of the danger of abuse of the *qui tam* device, Congress has enacted certain provisions that limit jurisdiction over *qui tam* actions. The FCA provides that "[w]hen a person brings an action under this subsection, no person other than the government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5) (2010).[2] This provision is commonly known as the first-to-file bar and "precludes claims arising from

---

[2] The Illinois False Claims Act contains a parallel provision. 740 ILCS 175/4(b)(5).

events that are already the subject of an existing *qui tam* suit*." United States ex rel. Batty v. Amerigroup Ill., Inc.*, 528 F. Supp. 2d 861, 872 (N.D. Ill. 2007). "Secondary suits that do no more than remind the United States of what it has learned from the initial suit deflect recoveries from the Treasury to rewards under § 3730(d)." *United States ex rel. Chovanec v. Apria Healthcare Grp., Inc.*, 606 F.3d 361, 364 (7th Cir. 2010).

In assessing whether the first-to-file bar applies, courts examine (1) whether an earlier action was pending at the time that the later action was filed and (2) whether the two actions are related. The Seventh Circuit "read[s] 'related action based on the facts underlying the pending action' to specify only the materially similar situations that objectively reasonable readings of the original complaint, or investigations launched in direct consequence of that complaint, would have revealed * * *." *U.S. ex rel. Chovanec*, 606 F.3d at 365; see also *U.S. v. Sanford-Brown, Ltd.*, 2014 WL 1052944, at *6 (E.D. Wis. Mar. 17, 2014). "The second action is barred if it contains merely variations of the fraud scheme described in the first action, even if the second action alleged additional or somewhat different details about the defendant's fraud." *Batty*, 528 F. Supp. 2d at 873.

Defendant maintains that the Court does not have jurisdiction over the conduct incorporated into Counts I and II because on September 11, 2009, approximately two years before Relator filed his complaint, Susan Ruscher filed her second amended complaint (the only unsealed complaint in that matter) in *United States ex rel. Ruscher v. Omnicare*, No. 4:08-cv-03396 (S.D. Tex. Filed Sept. 11, 2009), containing the same allegation that Omnicare failed to collect accounts receivables in order to retain federal health care business. In her complaint, Ruscher alleges, among other things, that "in order to induce and retain business from favored skilled nursing facilities that provide services to a high volume of Medicare and Medicaid patients, Omnicare forgoes its Medicare Part A payments for pharmaceuticals and related services rendered to these facilities." She also alleges

that "Omnicare continues billing National Accounts and other favored customers for its Medicare Part A reimbursement but it declines to collect on these invoices regardless of how far these customers go into debt. Ruscher Compl. ¶¶ 2, 4. The Ruscher allegations are nationwide in scope and begin as early as 2006. Here, Relator alleges that beginning in 2009 in Illinois, "Omnicare * * * engaged in a pattern and practice of agreeing to forego payments of those bills for many of its clients, in exchange for and as an inducement for the nursing facility and/or its patients to continue purchasing lucrative prescription medications from Omnicare."

Litwiller does not dispute that *Ruscher* was filed first. Instead, he first contends that *Ruscher* does not bar his complaint because five customers that he alleges were involved in the accounts-receivable conduct were not "P-Hold Accounts" and are not "mentioned or implicated in *Ruscher*." However, the *Ruscher* complaint names as defendants two customers—Peterson Health Care (Relator's "Client A") and Asta Care Centers of Illinois (Relator's "Client D") and alleges that both were "P-Hold Accounts." Ruscher Compl. ¶¶ 553, 564, 569. Relator also argues that *Ruscher* did not allege any unlawful conduct in Illinois and thus did not put the government on notice of an alleged scheme in Illinois. Once again, Relators' assertions are belied by the complaint in *Ruscher*. A review of the *Ruscher* complaint indicates that it named as defendants 15 skilled nursing facilities located in Illinois (see *id.* at ¶¶ 441, 448, 471, 477, 487, 491, 494, 514, 514, 529-30, 536, 539, 553, 555, 564), named the State of Illinois as a plaintiff, and asserted claims under the Illinois Whistleblower Reward and Protection Act. *Id.* ¶ 742.

Relator relies on *United States ex rel. Chovanec* for the proposition that allegations about misconduct in one state would not put the government on notice of alleged misconduct in another state. 606 F.3d 361. The *Chovanec* court noted that "allegations about a scam in California or Kansas in the 1990s would not reveal to the United States any risk of a scam in Illinois in 2003,"

but also concluded that "fraud in Illinois in 2002 * * * is within the scope of a national, continuing, scheme alleged in 1998 and 1999." *Chovanec*, 606 F.3d at 364-65.  Having reviewed the *Ruscher* complaint, its allegations clearly are of an ongoing, nationwide scheme involving some of the specific customers Relator identifies as well as others in Illinois.

Relator also contends that his allegations are distinct from those in *Ruscher* because they include forgiveness of charges for pharmaceutical services and over-the-counter medications, claiming that these are "distinct and material facts."  Again, Relator either misreads or neglects to mention several references in the *Ruscher* complaint to forgiveness of amounts due for pharmaceutical drugs "and services."  Ruscher Compl. ¶¶ 588, 592, 640, 643, 646, 650.  Moreover, allegations regarding amounts due for pharmaceutical services and over-the-counter medications appear to be details of the same fraudulent scheme, rather than distinct conduct sufficient to escape the first-to-file bar.  See *United States ex rel. Batty*, 528 F. Supp. 2d 861, 873 (N.D. Ill. 2007) (assessing whether allegations in a later-filed complaint were additional details or constituted distinct conduct).  Both complaints allege a kickback scheme to forego amounts due, with conduct occurring in Illinois (including two of the same customers) and during the same time period.  Additionally, Ruscher alleges that the scheme was done at the direction of management and that larger skilled nursing facilities get this treatment, while others do not.  The Court concludes that the litigation in this case is based on the same core facts and conduct previously disclosed to the government in Ruscher, and therefore is barred by the first-to-file doctrine.[3]

---

[3] Relator also contends that because Omnicare moved to dismiss the *Ruscher* case on Rule 9(b) grounds, the first-to-file bar is inapplicable, relying on the Sixth Circuit's decision in *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966 (6th Cir. 2006).  *Walburn* has not been adopted by any other Circuit and has been either expressly rejected or questioned by several other courts.  See *United States ex rel. Batiste v. SLM Corp.*, 659 F.3d 1204, 1210 (D.C. Cir. 2011) (holding that a prior-filed complaint does not need to meet Rule 9(b) to bar later complaints and need only provide sufficient notice for the government to initiate an investigation); *United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 378 n.10 (5th Cir. 2009) ("The

**B.    Jurisdiction Over Discounts Conduct**

Qui tam actions are subject to an additional jurisdictional bar.  In addition to the first-to-file bar, the FCA contains a "public disclosure" bar, which provides that:

> The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed –
>
> > (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
> >
> > (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit or investigation; or
> >
> > (iii) from the news media,
>
> unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A)(iii) (2010).  The Seventh Circuit has noted that a "*qui tam* action would serve no purpose * * * [if] the government is already aware that it might have been defrauded and can take responsive action."  *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913, 915 (7th Cir. 2009) (holding that a letter from the government to the defendant demanding repayment for improper use of certain billing codes was a public disclosure that the government was both aware of and investigating the conduct in question).  Thus, the public disclosure bar was designed to deter "'me too' private litigation" (*United States ex rel. Goldberg v. Rush Univ. Med. Ctr.*, 680 F.3d 933, 934 (7th Cir. 2012)), by those "who do not possess their own insider information * * * and * * *

---

sufficiency of the [earlier] complaint under Rule 9(b) is a matter for that court to decide in the first instance.");  *United States ex rel. Wickliffe v. EMC Corp.*, 473 F. App'x 849, 851 (10th Cir. 2012) (acknowledging that it is "uneasy" with the Sixth Circuit's position in *Walburn*);  *United States ex rel. Beauchamp v. Academi Training Ctr., Inc.*, 933 F. Supp. 2d 825, 837 (E.D. Va. 2013) (holding that an insufficiently pled scheme of a prior-filed complaint did not preclude the application of the first to-file bar);  *United States ex rel. Heineman–Guta v. Guidant Corp.*, 874 F. Supp. 2d 35, 39–40 (D. Mass. 2012) (declining to follow *Walburn*);  *United States ex rel. Sandager v. Dell Marketing L.P.*, 872 F. Supp. 2d 801, 811 (D. Minn. 2012) (same).  The Court is not bound by *Walburn* and is not persuaded by its logic on these facts.

have nothing new to add.'"  *Glaser*, 570 F.3d at 915 (citing *United States ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 740 (7th Cir. 2007)).

In assessing whether it has jurisdiction to hear a *qui tam* suit under the FCA, a court first examines whether the relator's allegations have been "publicly disclosed." If so, it next asks whether the lawsuit is "based upon" those publicly disclosed allegations. If it is, the court determines whether the relator is an "original source" of the information upon which his lawsuit is based. See, *e.g., Glaser*, 570 F.3d at 913. At each stage of the jurisdictional analysis, the plaintiff bears the burden of proof. See *id.*; 31 U.S.C. § 3731(c); *cf. United Phosphorus, Ltd. v. Angus Chem. Co.,* 322 F.3d 942, 946 (7th Cir. 2003) ("The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction.").

For purposes of § 3730(e)(4), a "public disclosure" occurs when "the critical elements exposing the transaction as fraudulent are placed in the public domain." *United States ex rel. Feingold v. AdminaStar Fed., Inc.,* 324 F.3d 492, 495 (7th Cir. 2003). The allegations of wrongdoing need not be "widely disseminated." *Glaser*, 570 F.3d at 913. Rather, the Seventh Circuit has found allegations of wrongdoing to have been publically disclosed, for example, when (1) they appeared in a warning letter from an agency (*United States ex rel. Gross v. AIDS Research Alliance–Chi.,* 415 F.3d 601, 606 (7th Cir. 2005)); (2) they were the subject of a government audit (*United States ex rel. Gear v. Emergency Medical Associates of Illinois, Inc.,* 436 F.3d 726, 728 (7th Cir. 2006)); (3) they were included in reports prepared by a government agency (*United States ex rel. Feingold v. AdminaStar Fed., Inc.,* 324 F.3d 492, 496 (7th Cir. 2003)); or (4) information about fraudulent behavior has been provided to a "competent public official * * * who has managerial responsibility for the very claims being made" (*United States v. Bank of Farmington,* 166 F.3d 853, 861 (7th Cir. 1999) (overruled on other grounds by *Glaser*, 570 F.3d at

920)). *Glaser*, 570 F.3d at 913.  In *Glaser*, the court concluded that the allegations were publicly disclosed in an "administrative * * * audit or investigation" when the federal Centers for Medicare and Medicaid Services (a governmental agency) sent a letter to one of the provider's doctors demanding repayment for provider's improper use of the doctor's billing code.  The court concluded that the appropriate entity responsible for investigating claims of Medicare abuse had knowledge of possible improprieties with the provider's billing practices and was actively investigating those allegations and recovering funds.  *Id.* at 914.

Omnicare contends that the claims alleging improper discounts for pharmaceutical services should be dismissed under the FCA's and ICFPA's public disclosure bar.  On March 1, 2011, approximately nine months before Relator filed his complaint, the United States Department of Justice issued a subpoena to Omnicare, which required the production of documents and data related to agreements with customers, charges, and costs for consultant pharmacist services from September 1, 2009 until the date of the subpoena.  According to Defendant, the subpoena constitutes a public disclosure of an investigation by the Department of Justice of the same conduct that Relator alleges regarding improper discounts for consultant pharmacist services.  See, *e.g.*, § 3730(e)(4)(A)(iii).  Relator asserts that the subpoena sought "a broad [array] of documents on a number of subjects, including in part, documents relating to pricing of pharmaceutical services."  But the Court has reviewed the subpoena, and it contains 14 demands for documents—12 of which specifically seek documents relating to the provision of consultant pharmacist services, including the contracts relating to providing these services, the costs of providing the services, and the amounts billed and paid for these services; one of which requests a copy of a database into which consultant pharmacists enter data regarding their work; and the final request seeks documents relating to compliance with the AKS.  The subpoena does not seek information relating to any other subject.

Relator contends that (1) his claims based on improper discounts are not barred by public disclosure because the Department of Justice subpoena does not constitute a public disclosure, and, (2) in any event, he is an original source of the allegations. Relator attempts to distinguish *Glaser* from this case based on the fact that in *Glaser* the government issued demands for repayment through its investigation. Relator contends that here, the subpoena "was merely a request for documents, nothing more," arguing that there was no public disclosure because the investigation did not substantiate his allegations of fraud. But the subpoena issued by the United States Attorney for the District of Massachusetts clearly is evidence of an investigation. See *United States ex rel. Saldivar v. Fresenius Medical Care Holdings, Inc.*, 906 F. Supp. 2d 1264, 1273 (N.D. Ga. 2012) (concluding that "the government's subpoena to Defendant * * * clearly [constitutes a] public disclosure"); see also *United States ex rel. Schubert v. All Children's Health System, Inc.*, 941 F. Supp. 2d 1332, 1335 (M.D. Fla. 2013) (concluding that the defendants' production of documents pursuant to a subpoena constitutes a "public disclosure" within the meaning of § 3730(e)(4)(A)). In fact, the plain language of the subpoena states that its purpose was to obtain documents "which are necessary in the performance of the responsibility of the U.S. Department of Justice to investigate federal health care offenses * * *." Further, nothing in the Seventh Circuit's reasoning in *Glaser* suggests that the government investigation must substantiate the allegations to trigger the public disclosure bar. Again, the plain language of the FCA contains no requirement that the allegations are both publicly disclosed and substantiated. 31 U.S.C. § 3730(e)(4)(A)(iii). Thus, based on the Seventh Circuit's reasoning in Glaser and the plain language of the FCA, the federal government's investigation as evidenced by the subpoena is enough to constitute a public disclosure.[4]

---

[4] Relator does not take issue with Omnicare's argument that the government's investigation involved substantially the same allegations as those set forth in the Complaint, and the Court has concluded that the

Relator contends that even if the subpoena constitutes a public disclosure, his claims are not barred because he qualifies as an "original source" under § 3730(e)(4)(B). Even if a relator's allegations are found to be substantially the same[5] as allegations or transactions already publicly disclosed, he may avoid the jurisdictional bar if he is an original source of those allegations. § 3730(e)(4)(A)(iii). The pre–2010 statute defined an "original source" as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B) (1986). To qualify as an original source under the amended version, Relator must establish either (1) that prior to a public disclosure he voluntarily disclosed to the Government the information on which the allegations or transactions in a claim are based, or (2) that he has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and has voluntarily provided the information to the government before filing an action under this section. § 3730(e)(4)(A)(iii).

While Relator alleges that he is an original source of the information, the only statement in his complaint to support this legal conclusion is that he "has knowledge of the false statements and/or claims that Omnicare submitted, or caused to be submitted, to the Government." Compl. ¶ 15. In addition to asserting a legal conclusion, that allegation is not sufficient to qualify as an original source even for pleading purposes. At this time, Relator does not qualify as an original source because he does not allege in his complaint that he voluntarily disclosed the information

government's investigation constitutes a public disclosure. Thus, the only remaining question is whether Relator qualifies as an original source.

[5] The public disclosure bar was amended to its current form in 2010. The prior version of the statute provided that courts did not have jurisdiction over an FCA action that was "based upon the public disclosure of allegations * * *." See 31 U.S.C. § 3730(e)(4)(A) (2009). The Seventh Circuit interpreted "based upon" to mean "substantially similar to" the allegations already in the public domain. See *Glaser*, 570 F.3d at 910. Thus, the amendments expressly incorporate the Seventh Circuit standard. *Leveski v. ITT Educ. Serv.*, 719 F.3d 818, 828 n.1 (7th Cir. 2013).

underlying his allegations to the government at any time. Nor does he sufficiently allege that his knowledge of Omnicare's conduct is independent of and materially adds to the publically disclosed investigation. However, based on representations made in Plaintiff's response brief, the Court will allow Plaintiff to amend his complaint as to this conduct if Plaintiff believes that he can cure these deficiencies consistent with Federal Rule of Civil Procedure 11.[6]

## C.    Rule 12(b)(6)

Relator premises each of his six allegations that Omnicare violated the FCA and the IFCA on Omnicare's alleged violations of federal and state anti-kickback laws. The Federal Anti-Kickback Statute ("AKS"), codified at 42 U.S.C. § 1320a-7b(b), prohibits among other things, offering or paying any remuneration to any person to induce such person to purchase any good for which payment may be made in whole or in part under a Federal health care program. See *United States ex rel. Grenadyor v. Ukranian Village Pharmacy, Inc.*, 895 F. Supp. 2d 872, 878 (N.D. Ill. 2012) (citing § 1320a–7b(b)(2)(B)).[7] A violation of the AKS requires intent to induce referral of federal health care program business. See *United States ex rel. Klaczak v. Consol. Med. Transp.*, 458 F. Supp. 2d 622, 675 (N.D. Ill. 2006) ("The AKS also requires a showing of willfulness by a defendant to ground liability."); see also *Osheroff*, 2012 WL 2871264, at *8 ("Relator must allege

---

[6] Relator's claims under the ICFPA are similarly barred, despite the differences in the statutory language. While the ICFPA uses the pre-amendment "based upon" standard, as noted above, the Seventh Circuit has interpreted this to mean "substantially the same as." *Glaser*, 570 F.3d at 910. For the reasons stated above, Relator's allegations are substantially the same as the information disclosed in the federal investigation. With respect to the original source standard, at this time Relator does not qualify under the state definition of an individual with "direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the State's Attorney or Attorney General before filing an action." 740 ILCS 92/30(b). He has not alleged the basis for inferring that he has firsthand knowledge of the information and does not allege that he provided this information to the Illinois government before filing this action.

[7] Relator also alleges Omnicare's conduct violated the Illinois Public Aid Code, 305 ILCS 5/8A-3(b), and the Illinois Insurance Claims Fraud Prevention Act, 740 ILCS 92/5, which contain the same elements as the AKS, including unlawful remuneration. For simplicity, the Court refers to the three statutes as "the anti-kickback statutes."

that offers or payments of remuneration to induce illegal referrals were done knowingly and willfully."). There is no private right of action under the AKS. *United States ex rel. Barrett v. Columbia/HCA Healthcare Corp.*, 251 F. Supp. 2d 28, 37 (D.D.C. 2003). In order to establish FCA liability against Omnicare in this case, Relator must plead facts that if proven will establish that Omnicare violated the AKS. See *Osheroff*, 2012 WL 2871264, at *7 (finding that a relator "will be required to plead facts with particularity showing a violation of * * * AKS in order to show that any certification of compliance with * * * AKS is false."). Thus, Relator must plead that Omnicare (1) knowingly and willfully (2) offered or paid (3) remuneration (4) in return for purchasing or ordering any item or service for which payment may be made under a federal health care program. § 1320a-7b(b).

Defendant's 12(b)(6) challenges fail. Relator has sufficiently pled that Omnicare knowingly set upon a course to develop and implement schemes for the purpose of inducing continued business from facilities, including some that threatened to terminate their relationships. Relator has pled that Omnicare forgave debts, delayed in collecting them, failed to charge the fair market value for services, or gave vast discounts to facilities in exchange for continued business. At this stage, these allegations (and the reasonable inferences that can be drawn from them) suffice. Omnicare quibbles with the lack of specificity of Relator's allegations, but in fact Relator, a longtime employee of Omnicare, has laid out the schemes in detail and identified at least some of the major players on Omnicare's end as well as the facilities that were allegedly offered remuneration in exchange for business. The majority of Omnicare's challenges are more appropriate at the proof stage, when Relator will have to demonstrate—not merely allege—that the facilities at issue did not pay the fair market value for services and goods but instead received substantial discounts or credits in exchange for continuing to do business with Omnicare. These issues will be fleshed out in discovery, but for now, Relator has sufficiently alleged violations of

the anti-kickback statutes.

### D.     Federal Rule of Civil Procedure 9(b)

Under Rule 9(b), it is sufficient to plead knowledge generally.  31 U.S.C. §§ 3729(a)(1) requires that an individual act "knowingly" in presenting, causing to be presented a false claim, or making, using or causing to be used a false record or statement.  Specifically, the FCA requires actual knowledge of the information and either an act in deliberate ignorance or in reckless disregard of the truth or falsity of the information.  31 U.S.C. § 3729(b)(1)(A)(i-iii).  Relator has sufficiently alleged that Defendant acted "knowingly" and also has given multiple examples throughout the amended complaint that indicate an intent to deceive.  See also *U.S. ex rel. Capriola v. Brightstar Educ. Group, Inc.*, 2013 WL 1499319, at *6-7 (E.D. Cal. April 11, 2013).  These allegations meet Rule 9(b)'s scienter requirement.  See, *e.g., DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990); *United States ex rel. Chandler v. Cook County, Ill.*, 277 F.3d 969, 976 (7th Cir. 2002) (noting that Congress "changed the knowledge element of the offense, making success more likely" by setting "a fairly low standard").

Omnicare also argues for dismissal because Relator did not give specific examples of actual false claims submitted, the date of the claim, who submitted it, the amount of the claim, where the claim was submitted from, and to whom.  In the context of a scheme involving reimbursements under Medicare and Medicaid, like the present case, Omnicare's argument has been expressly rejected.  See *U.S. ex rel. Geschrey v. Generations Healthcare, LLC,* 922 F. Supp. 2d 695, 705 (N.D. Ill. 2012). In *Gerschrey*, the court concluded that, despite the relators' lack of specific knowledge about billings submitted to the government, the fact that most of the defendant's patients were receiving government benefits and that defendant billed Medicare and Medicaid at a per diem rate for each covered patient created a strong inference that bills for the care of patients as

to whom fraud has been alleged were submitted to the government. *Id.* Additionally, even though the relators did not specify in each example whether the defendant billed Medicaid, Medicare, or both, "the facts as pleaded support[ed] the inference that claims based on fraudulent misrepresentations were submitted to one or both of the government programs." *Id.* (noting that, at the pleading stage, a relator "need not exclude all possibility of honesty").

Here, Relator sets forth the claims and payments in sufficient detail in more than 16 paragraphs (see Compl. ¶ 88-104), and only pleads on information and belief as to one of those allegations (see Compl. ¶ 99 ("Upon information and belief, Omnicare has submitted and continues to submit thousands of such claims for pharmaceutical products dispensed to residents of nursing facilities in Illinois. These claims are the direct result of the contracts it obtains with the help of illegal kickbacks.")). Based on the allegations, the claims were submitted by each Omnicare facility. They were submitted on Medicaid claim forms, containing a mandatory certification by Omnicare that it complied with all AKS. The claim form contains a unique Medicaid provider ID number, which constitutes an electronic stamp attesting that Omnicare is in compliance with the AKS. Plaintiff has alleged that the claims are submitted at least once per day, that they are mostly submitted electronically, that the claim is processed automatically, and that Omnicare receives payment on a weekly basis resulting from these false claims. Put together, Relator has alleged that Omnicare submitted false claims daily from its offices in Illinois between January 2009 and December 2011 and explained the practice by which it was done, how and when payment was received, and why the claim was false. See, e.g., *U.S. ex rel. Trombetta v. EMSCO Billing Servs., Inc.*, 2002 WL 34543515, *4 (N.D. Ill. Dec. 5, 2002) ("[relator] has done better than point to a single fraudulent bill—she has explained how several specific billing practices led to hundreds of thousands of fraudulent bills."). Relator has pled sufficient detail as to the allegations regarding false claims.

**IV.    Conclusion**

For the reasons set forth above, the Court grants in part and denies in part Omnicare's motion to dismiss [28].  The Court grants the motion with respect to Omnicare's jurisdictional arguments pertaining to the conduct described as "Forgiveness of Accounts Receivable" and "Improper Discounts for Pharmaceutical Services" and denies the motion in all other respects.  In the event that Plaintiff-Relator believes, consistent with legal authority and Rule 11 concerns, that he can cure the deficiencies identified, Plaintiff is given 21 days in which to amend his complaint as to his claim for "Improper Discounts for Pharmaceutical Services."

Dated: April 14, 2014                                    _____

                                                                          Robert M. Dow, Jr.

                                                                          United States District Judge